2003 UT 57

**Marc SMITH, Plaintiff, Appellant, and Cross–Appellee,**

v.

**GRAND CANYON EXPEDITIONS COMPANY, Martin Mathis, Michael Denoyer, Ronald R. Smith, Donald Saunders, John Does 1 through 5, and Jane Does 1 through 5, Defendants, Appellees, and Cross–Appellants.**

No. 20010667.

Supreme Court of Utah.

Dec. 16, 2003.

Rehearing Denied Feb. 4, 2004.

counsel's willingness to undertake the representation.

Benson L. Hathaway, Jr., Corbin B. Gordon, Peter Stirba, Brady L. Rasmussen, Salt Lake City, for Smith.

John A. Anderson, Matthew M. Durham, Richard C. Skeen, Salt Lake City, for Grand Canyon Expeditions, Mathis, Denoyer, and Saunders.

NEHRING, Justice:

¶ 1 This appeal concerns the termination of Marc Smith's employment and the amount of money owed Mr. Smith by Grand Canyon Expeditions for the purchase of Mr. Smith's stock in the company. This appeal comes to us for interlocutory review of rulings made by the trial court on Smith's motion for leave to amend his complaint and three summary judgment motions brought by Grand Canyon. We affirm the decisions of the trial court on all issues except the trial court's refusal to dismiss the individual defendants. On that issue, we reverse the decision of the trial court and remand for dismissal of the individual defendants.

¶ 2 For many years, Mr. Smith worked for a river rafting company, Grand Canyon Expeditions, Inc. That company is not the defendant here. Grand Canyon Expeditions, Inc. was sold to another group of individuals, including defendants Mathis and Denoyer, and was renamed Grand Canyon Expeditions Company. This company and its employees are the defendants here, to whom we will collectively refer as "Grand Canyon."

¶ 3 Smith stayed on with the new company as vice president of operations and acquired a shareholder interest. The terms of Mr. Smith's employment with Grand Canyon were set out in an employment agreement. As a shareholder in Grand Canyon, Mr. Smith executed a buy-sell agreement with the company providing that upon leaving Grand Canyon, his stock would be repurchased by the remaining shareholders for a certain percentage of the net book value.

¶ 4 After six years, Mr. Smith was asked to leave Grand Canyon. The parties disagree over the reasons for Mr. Smith's departure, but it is clear that a fetid atmosphere enveloped them by the summer of 1992. Grand Canyon believed it had grounds to dismiss Mr. Smith for cause. Mr. Smith rejected any claim that he was blameworthy. In this setting, Mr. Smith and Grand Canyon negotiated and signed a separation agreement that called for Mr. Smith's resignation and detailed the effect of his resignation on both the employment and buy-sell agreements.

¶ 5 The purpose, scope, and legal consequences of the separation agreement are central to this appeal. Several provisions of the separation agreement feature prominently in our analysis and therefore merit mention, including (1) Mr. Smith's agreement to resign, (2) agreement on the value of Mr. Smith's Grand Canyon stock together with payment terms, (3) Grand Canyon's agreement to pay Mr. Smith severance pay "in lieu of any other amounts or benefits which may be due from the Corporation as provided in the Employment Agreement or otherwise," and (4) Grand Canyon's agreement to waive the non-compete clause in the employment agreement. Grand Canyon paid, and Mr. Smith accepted, the payments promised in the separation agreement.

¶ 6 The hope that the separation agreement would bring peace to the conflict between Grand Canyon and Mr. Smith proved to be illusory. Several years after Mr. Smith left the company, Grand Canyon received a refund of nearly a million dollars that it had paid to the state of Arizona as a "transaction privilege tax." The Arizona Supreme Court held the tax to have been unlawfully collected from companies like Grand Canyon and ordered retroactive refunds. The refund to Grand Canyon included tax payments made during the years Mr. Smith was with the company. Although Grand Canyon passed some of the refund through to customers, it appropriately retained most of it as corporate income.

¶ 7 At the time Mr. Smith left Grand Canyon, the company had sought the refund, but the Arizona Supreme Court had not yet ruled on the matter. The refund was not mentioned in the separation agreement.

¶ 8 Mr. Smith sued Grand Canyon and its principals. He claimed that Grand Canyon breached the employment contract by terminating him. He also claimed that Grand Canyon breached the implied covenant of good faith and fair dealing by artificially undervaluing the buyout value of Mr. Smith's stock and by refusing to include the Arizona tax refund as part of the net book value of Grand Canyon. Mr. Smith also unsuccessfully sought to amend his complaint to seek

recovery of a portion of the tax refund under an unjust enrichment theory.

¶ 9 Meanwhile, Grand Canyon also filed a series of motions for summary judgment. When the dust settled, the trial court (1) dismissed Mr. Smith's breach of contract claim relating to his termination by reason of accord and satisfaction, (2) dismissed Mr. Smith's implied covenant of good faith and fair dealing claims as they related to the valuation of his Grand Canyon stock, (3) preserved Mr. Smith's claim that Grand Canyon breached its implied covenant of good faith and fair dealing relating to the Arizona tax refund, (4) dismissed Mr. Smith's claim for punitive damages, (5) dismissed Mr. Smith's claim for attorney fees, and (6) denied Mr. Smith's motion to amend his complaint to assert a claim for unjust enrichment.

¶ 10 In this interlocutory appeal, we review each of these rulings as well as the trial court's denial of a motion made by the individual defendants to dismiss the claims as against them.

## I. MR. SMITH'S EMPLOYMENT-RELATED CLAIMS

¶ 11 We first take up the trial court's determination that Mr. Smith's employment claims are barred by accord and satisfaction. "We review the district court's summary judgment ruling for correctness, granting no deference to its legal conclusions." *Woodbury Amsource, Inc. v. Salt Lake County,* 2003 UT 28, ¶ 4, 73 P.3d 362.

¶ 12 Before turning to the merits of this issue, we address Mr. Smith's procedural challenge. Mr. Smith claims that pursuant to rule 8(c) of the Utah Rules of Civil Procedure, Grand Canyon was required to plead accord and satisfaction as an affirmative defense. Mr. Smith argues that because it did not, Grand Canyon should not be permitted to prevail on this theory. It is clear, however, that Grand Canyon raised accord and satisfaction in its motion for summary judgment, and Mr. Smith did not object. We have previously noted that

> rule 8(c), U.R.C.P., requires that affirmative defenses be pleaded. It is a good rule whose purpose is to have the issues to be

tried clearly framed. But it is not the only rule in the book of Rules of Civil Procedure. They must all be looked to in the light of their even more fundamental purpose of liberalizing both pleading and procedure to the end that the parties are afforded the privilege of presenting whatever legitimate contentions they have pertaining to their dispute. What they are entitled to is notice of the issues raised and an opportunity to meet them. When this is accomplished, that is all that is required. Our rules provide for liberality to allow examination into and settlement of all issues bearing upon the controversy, but safeguard the rights of the other party to have a reasonable time to meet a new issue if he so requests.

*Union Bank v. Swenson,* 707 P.2d 663, 668 (Utah 1985); *Cheney v. Rucker,* 14 Utah 2d 205, 381 P.2d 86, 91 (1963). Here, no one questions that Mr. Smith had adequate notice that Grand Canyon intended to employ the affirmative defense of accord and satisfaction. The trial court therefore properly considered it.

¶ 13 Next, we turn to the merits of Mr. Smith's challenge to the trial court's determination that the existence of an accord and satisfaction warranted summary dismissal of Mr. Smith's wrongful discharge claims. We have developed a three-part test for accord and satisfaction. There must be (1) a bona fide dispute over an unliquidated amount, (2) a payment made in full settlement of the entire dispute, and (3) an acceptance of the payment. *Estate Landscape v. Mountain States,* 844 P.2d 322, 325 (Utah 1992). Mr. Smith insists that none of these elements were established by the record as a matter of law. We disagree.

¶ 14 First, Mr. Smith contends that the record does not support the trial court's finding that there was a bona fide dispute over an unliquidated claim at the time the separation agreement was executed. However, even his grudging concession in his brief that "he surely was aware that there may be concerns related to the termination of his employment" is sufficient to fulfill the bona fide dispute element of accord and satisfaction. The dispute over the future of Mr. Smith's

employment contract with Grand Canyon carried with it inevitable, but uncertain, economic consequences. Mr. Smith's employment-based breach of contract claim was, therefore, "a good-faith disagreement over the amount due under the contract" and well within the ambit of the first element of accord and satisfaction.

¶ 15 Secondly, the plain language of the separation agreement demonstrates that the severance pay and release from the non-compete covenant granted to Mr. Smith constituted payment in full settlement of the employment dispute. Section 6 of the separation agreement unambiguously states that Mr. Smith's severance pay is "in lieu of any other amounts or benefits which may be due from the Corporation as provided in the Employment Agreement or otherwise." Mr. Smith has failed to point to any evidence in the record showing that the parties intended this language to permit the survival of claims that Grand Canyon breached its employment agreement with Mr. Smith.

¶ 16 Lastly, it is undisputed that Mr. Smith accepted the severance pay and enjoyed the benefit of release from the non-compete clause. Thus, all three prongs of the test for accord and satisfaction are easily met, and the trial court was correct in summarily dismissing Mr. Smith's breach of contract claims relating to his termination from Grand Canyon.

## II. MR. SMITH'S STOCK VALUATION CLAIMS

¶ 17 Contrary to the assertions of Mr. Smith, the trial court did not extend the reach of its accord and satisfaction analysis to the dispute over the valuation of Grand Canyon. Rather, the court determined that no material facts were at issue relating to Mr. Smith's claim that Grand Canyon breached the implied covenant of good faith and fair dealing flowing from the buy-sell agreement. We review for correctness, and affirm, the trial court's conclusion that there were no material facts in dispute. *See Woodbury Amsource, Inc. v. Salt Lake County,* 2003 UT 28, ¶ 4, 73 P.3d 362.

¶ 18 Grand Canyon acquired a right to purchase Mr. Smith's stock in the company under the terms of the buy-sell agreement. The purchase price was based on the net book value of the company. The buy-sell agreement expressly addressed the "who" and "how" of the net book valuation, stating:

> The determination of net book value shall be made by the accountant servicing the Corporation (Grand Canyon) and shall be made according to generally accepted accounting principles. Any such determination shall be conclusive on the parties.

Mr. Smith now claims that Grand Canyon's value was rendered "artificially" low through the use of accounting practices which, while they may have conformed to generally accepted accounting principles ("GAAP"), clashed with the reasonable expectations of the parties. According to Mr. Smith, those expectations mandated the application of principles selected to yield a higher, "real" value of the company, and by selecting the "artificial" over the "real" net book value, Grand Canyon breached its implied covenant of good faith and fair dealing with Mr. Smith.

¶ 19 Mr. Smith argues that the buy-sell agreement empowered Grand Canyon with discretion to determine the net book value of the company and that it unlawfully abused this discretion. Mr. Smith correctly states that where one party has discretion over another according to the terms of a contract, that party must act with good faith and fair dealing. *Res. Mgmt. Co. v. Weston Ranch & Livestock Co.,* 706 P.2d 1028, 1037 (Utah 1985); *see also Cook v. Zions First Nat'l Bank,* 919 P.2d 56, 60 (Utah Ct.App.1996) ("When one party to a contract retains power or sole discretion in an express contract, it must exercise that discretion reasonably and in good faith").

■ ¶ 20 Although the implied covenant of good faith and fair dealing cannot be waived, *Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 801 n. 4 (Utah 1985), the degree to which a party to a contract may invoke the protections of the covenant turns on the extent to which the contracting parties have defined their expectations and imposed limitations on the exercise of discretion through express contract terms. *Malibu Inv. Co. v. Sparks,*

2000 UT 30, ¶ 19, 996 P.2d 1043. Mr. Smith and Grand Canyon expressly identified net book value as the valuation benchmark to be used in valuing Mr. Smith's stock. Standing alone, this contract term would necessarily have required supplementation by numerous implied terms relating to how net book value would be gauged and who would do it.

¶ 21 Mr. Smith and Grand Canyon did not, however, leave the manner of valuation to implication. Instead, they bargained for it. By expressly delegating the authority for conducting the net book valuation to the company's accountant and by selecting compliance with GAAP as the valuation methodology, Mr. Smith and Grand Canyon substantially narrowed the role of any implied legal or factual elements in defining their shared expectations.

¶ 22 The trial court expressed the view that because GAAP is elastic in its application, compliance with GAAP did not conclusively establish that Grand Canyon satisfied the covenant of good faith and fair dealing. This assessment expands the scope of the implied covenant too broadly. The reach of the implied covenant of good faith and fair dealing extends no further than the purposes and express terms of the contract. *Id.* Where, as here, the express contract term defines and limits discretionary performance, the implied covenant has little, if any, utility.

¶ 23 The trial court determined that Mr. Smith's expert concluded that "the approach of the corporate accountant in dealing with expenses, depreciation, purchase price allocations, etc., though 'aggressive,' was nonetheless within the range of generally accepted accounting principles." Because neither party has raised on appeal the issue of whether disputed material facts are present on the record from which the trier of fact could conclude that the accounting practices used to value Mr. Smith's shares did not conform to GAAP, we have no reason to doubt the correctness of the trial court. Thus, because the methodology used to value

Mr. Smith's shares met the standards agreed on by the parties to limit discretion, the trial court correctly ruled that Grand Canyon did not breach its implied covenant of good faith and fair dealing.

### III.  MR. SMITH'S ARIZONA TAX REFUND CLAIMS

¶ 24 Grand Canyon appeals from two of the trial court's rulings which relate to the Arizona tax refund.[1] First, Grand Canyon appeals the trial court's denial of its motion to exclude as unreliable and irrelevant the opinion testimony of Mr. Smith's accounting expert witness, Derk Rasmussen. Mr. Rasmussen testified, over Grand Canyon's objection, that in his opinion Grand Canyon's failure to treat the Arizona tax refund as a "prior period adjustment" violated GAAP. This opinion is material to whether Grand Canyon breached its implied covenant of good faith and fair dealing in its treatment of the tax refund under the buy-sell agreement. Were the refund to be booked as a prior period adjustment, Mr. Smith would, in Mr. Rasmussen's view, be entitled to a portion of the refund proceeds owing to an increased net book value of Grand Canyon. Secondly, Grand Canyon argues that regardless of whether Mr. Smith's expert witness testimony was admitted, it did not breach the implied covenant of good faith and fair dealing because this covenant was extinguished upon termination of the contract. We address each issue in turn.

*A.  Mr. Smith's Expert Witness Testimony*

¶ 25 We review the trial court's decision not to exclude Mr. Rasmussen's expert testimony for an abuse of discretion. *Alder v. Bayer Corp.,* 2002 UT 115, ¶ 20, 61 P.3d 1068. Grand Canyon appeals the trial court's denial of its motion to exclude Mr. Rasmussen's testimony on the sole ground that according to its own accounting expert, Mr. Rasmussen's opinion was flawed. Grand Canyon neither challenged the credentials of Mr. Rasmussen nor claimed that his field of

1. We have rejected as not properly raised the issue of whether disputed material issues of fact precluded the trial court from granting summary judgment on the stock valuation claims not relat-

ed to the Arizona tax refund. However, Grand Canyon's cross-appeal properly places the matter before us in the setting of evaluating the trial court's ruling on the refund.

expertise was somehow "novel." *Patey v. Lainhart,* 1999 UT 31, ¶ 16, 977 P.2d 1193. Rather, it contended only that Mr. Rasmussen's opinion concerning Grand Canyon's accounting practices was so substandard as to be unreliable and therefore inadmissible under rule 702 of the Utah Rules of Evidence. However, disputes over the merits of competing opinions in non-novel scientific, technical, or specialized fields are properly left to the trier of fact to resolve. Such disputes will stimulate our intervention only where the trier of fact has abused his discretion. In this case, Grand Canyon has given us no reason to disturb the decision of the trial court, and we therefore hold that the trial court did not abuse its discretion in receiving Mr. Rasmussen's opinion on the accounting treatment of the Arizona tax refund.

### B. Mr. Smith's Claim that Grand Canyon Breached the Implied Covenant of Good Faith and Fair Dealing

¶ 26 Grand Canyon also takes issue with the trial court's denial of its motion to summarily dismiss Mr. Smith's claim that it breached the implied covenant of good faith and fair dealing by refusing to permit him to share in the Arizona tax refund. We review the decision of the trial court for correctness and affirm. *See Woodbury Amsource, Inc. v. Salt Lake County,* 2003 UT 28, ¶ 4, 73 P.3d 362.

¶ 27 Grand Canyon insists that its implied covenant of good faith and fair dealing was extinguished when obligations under the buy-sell agreement were fully performed.[2] It finds support for this assertion in an opinion of our court of appeals which it reads to hold that the implied covenant does not survive the contract to which it adheres. *Republic Group v. Won–Door Corp.,* 883 P.2d 285, 289–90 (Utah Ct.App.1994). We agree with the court of appeals' observation that the rescission or termination of a contract extinguishes the implied covenant of good faith and fair dealing. This principle of law is easily applied where, as in most cases

involving rescission, the fact of contract termination and the date of termination are clear. However, ascertaining whether or when a contract has terminated often, as here, requires substantial factual inquiry. This is particularly true when a party claims that the contract was terminated by performance rather than, for example, by rescission. The multifarious forms that contract performance may take will often make the question of contract termination one to be answered by the trier of fact. Grand Canyon had not completed making payments due Mr. Smith under its agreements with him on the date that Grand Canyon received the Arizona tax refund. We decline, therefore, to hold that as a matter of law Mr. Smith's contractual relationship with Grand Canyon had terminated, and with it the implied covenant of good faith and fair dealing.

¶ 28 Thus, we reject Grand Canyon's contention that Mr. Smith's claim that the implied covenant of good faith and fair dealing attaches to the Arizona tax refund fails as a matter of law. We also reject Grand Canyon's challenge to Mr. Rasmussen's opinion testimony concerning the refund's accounting treatment. Accordingly, we affirm the trial court's denial of summary judgment on the Arizona tax refund.

### IV. MR. SMITH'S CLAIM FOR PUNITIVE DAMAGES

¶ 29 We review the trial court's summary dismissal of Mr. Smith's claim for punitive damages based on Grand Canyon's alleged breach of the implied covenant of good faith and fair dealing for correctness, and affirm. *See Woodbury Amsource, Inc. v. Salt Lake County,* 2003 UT 28, ¶ 4, 73 P.3d 362. The trial court properly stated that punitive damages are recoverable only for torts, not for breach of contract. *See Cook Assocs., Inc. v. Warnick,* 664 P.2d 1161, 1167 (Utah 1983). In this case, Mr. Smith failed to plead any tort claims until his brief before this court, in which he accuses his former colleagues of "intentionally, wilfully, if not

---

2. Both the claims we have categorized as "stock valuation claims" and those we have classified as the "Arizona tax refund claims" are tied to the buy-sell agreement. The unique factual circumstances surrounding the tax refund mandate an analysis independent of that applied to other valuation issues.

recklessly [undertaking] to learn the operation of the business from Smith and then [terminating] his involvement as an employee and shareholder." Mr. Smith also argues that he was "wrongfully deprived of the economic value of his interest in [Grand Canyon]." These vague assertions of misconduct, coupled with the absence of a tort claim in his complaint, do not rise to the level of a properly pleaded tort. Thus, because the issues before the trial court sound exclusively in contract, we affirm the trial court's dismissal of the claim for punitive damages.

## V. MR. SMITH'S CLAIM FOR ATTORNEY FEES

¶30 We also affirm the trial court's summary dismissal of Mr. Smith's claim for attorney fees. We review this issue for correctness. *Woodbury Amsource, Inc. v. Salt Lake County*, 2003 UT 28, ¶4, 73 P.3d 362. The trial court properly stated that our case law does not encompass the type of relief that Mr. Smith requests. "Utah adheres to the well-established rule that attorney fees generally cannot be recovered unless provided for by statute or by contract." *Canyon Country Store v. Bracey*, 781 P.2d 414, 419 (Utah 1989) (citing *Turtle Mgmt., Inc. v. Haggis Mgmt.*, 645 P.2d 667, 671 (Utah 1982)). Mr. Smith's request for attorney fees is not based on statute or contract, nor does it fall within any exceptions to the general attorney fee rule created by this court, and we decline to create an additional exception to accommodate the facts presented in the record before us. *See, e.g., Heslop v. Bank of Utah*, 839 P.2d 828 (Utah 1992) (creating an exception for employment termination cases). Therefore, we affirm the trial court's dismissal of Smith's claim for attorney fees.

## VI. MR. SMITH'S MOTION TO AMEND HIS COMPLAINT

¶31 Smith challenges the trial court's denial of his motion for leave to amend his complaint to add a claim for unjust enrichment. The granting or denial of leave to amend a pleading is within the broad discretion of the trial court, and we will not disturb such a ruling absent a showing of an abuse of that discretion. *R & R Energies v. Mother Earth Indus.*, 936 P.2d 1068, 1080 (Utah 1997).

¶32 A party may request that a judge grant leave to amend pleadings according to the dictates of rule 15(a) of the Utah Rules of Civil Procedure, which states that "leave shall be freely given when justice so requires." In Utah, rule 15 is interpreted liberally to allow parties the opportunity to fully adjudicate their claims on the merits. *Timm v. Dewsnup*, 851 P.2d 1178, 1182 (Utah 1993). However, the dimensions of liberality are generally defined by the trial judge, who is best positioned to evaluate the motion to amend in the context of the scope and duration of the lawsuit.

¶33 Moreover, a party may not amend a complaint to add a claim that is legally insufficient or futile. *Kasco Servs. Corp. v. Benson*, 831 P.2d 86, 92–93 (Utah 1992); *see also Wright v. Univ. of Utah*, 876 P.2d 380, 387 (Utah Ct.App.1994). In this case, Mr. Smith seeks to amend his complaint for the third time to include an action of unjust enrichment. He argues that he should be entitled to pursue a claim for unjust enrichment because of Grand Canyon's failure to share the Arizona tax refund with him.

¶34 However, this allegation does not meet the standard to support a claim for unjust enrichment, and it is therefore legally insufficient. A proper claim for unjust enrichment requires that the party show (1) a benefit conferred on one person by another, (2) an appreciation or knowledge by the conferee of the benefit, and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value. *Am. Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1192 (Utah 1996). Thus, unjust enrichment is a claim between a conferor and a conferee. Grand Canyon correctly points out that the benefit it received came from the state of Arizona, not Smith, and thus a claim of unjust enrichment is legally insufficient and futile. We therefore conclude that the trial court properly exercised

its discretion in denying Mr. Smith's motion to amend his complaint.

### VII. MR. SMITH'S ALTER EGO CLAIMS

¶ 35 Finally, Grand Canyon appeals the trial court's refusal to dismiss claims against the individual defendants, contending that the individuals were not parties to any contract with Smith and therefore have no individual liability. The trial court determined that Grand Canyon's selection of "S" corporation status created an issue of fact sufficient to overcome a summary judgment on the issue of whether Grand Canyon's corporate form should be disregarded and the individual defendants exposed to liability for its acts. We review this question of law for correctness. *Estate Landscape & Snow Removal Specialists v. Mountain States Tel. & Tel. Co.*, 844 P.2d 322, 325 (Utah 1992).

 ¶ 36 The corporate form may be disregarded when there is "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist ... and the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow." *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979). This is commonly referred to as "the alter ego theory." In denying defendants' motion for summary judgment, the trial court noted that "the corporate defendant is a subchapter S, closely held, corporation and that virtually all of the refund monies have been distributed to the small group of shareholders who are the remaining defendants."

¶ 37 While the trial court accurately observed that in an "S" corporation, payments like the tax refund are passed through to shareholders without being exposed to taxation on the corporate level, this fact does not carry with it a suggestion of impropriety or inequity. Grand Canyon's election of the "S" corporate form was entirely lawful and, standing alone, is irrelevant to an alter ego inquiry. We therefore reverse the trial court and remand for dismissal of the individual defendants.

### CONCLUSION

¶ 38 In conclusion, we reverse the decision of the trial court only with respect to its refusal to dismiss the individual defendants. On this issue, we remand for action consistent with this opinion. On all other issues, the decisions of the trial court are affirmed.

¶ 39 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING'S opinion.

¶ 40 Justice RUSSON did not participate herein; then District Judge RONALD E. NEHRING sat.