2009 UT App 160

**U.S.A. UNITED STAFFING ALLIANCE, LLC, Plaintiff and Appellant,**

v.

**WORKERS' COMPENSATION FUND, Advantage Workers Compensation Insurance Company, and Does 1–100, Defendants and Appellee.**

No. 20070928–CA.

Court of Appeals of Utah.

June 18, 2009.

Lawrence D. Buhler, Salt Lake City, for Appellant.

James R. Black and Cynthia Daniels, Workers Compensation Fund of Utah, Salt Lake City, for Appellees.

Before Judges BENCH, ORME, and DAVIS.

## OPINION

DAVIS, Judge:

¶1 U.S.A. United Staffing Alliance, LLC (USA) appeals the trial court's grant and denial of several partial summary judgment motions. USA also appeals the trial court's grant of a directed verdict and a motion in limine, as well as an award of attorney fees in favor of Workers Compensation Fund (WCF). We affirm.

## BACKGROUND

¶2 USA is a professional employers organization that, among other things, secures workers' compensation insurance for the client companies it represents. In December 1999, USA purchased a Workers Compensation and Employers Liability Insurance Policy (the Policy) from WCF. The Policy was retrospective in nature, meaning that a por-

tion of the premiums came due at the end of the plan year and were adjusted either upward or downward depending on that year's losses. According to the language of the Policy, WCF calculated retrospective premiums "using all loss information ... as of a date six months after the rating plan period ends."

¶3 USA failed to pay the full amount of the premiums for the years 2000 and 2001 and was in arrears for 2002. Accordingly, in June 2002, WCF cancelled the Policy. In March 2003, USA filed a preemptive lawsuit against WCF, alleging breach of contract, intentional interference with prospective economic advantage, defamation, breach of the implied covenant of good faith and fair dealing, and injurious falsehood. USA subsequently amended its complaint to include additional claims for pricing discrimination and facility discrimination under the Utah Unfair Practices Act (the Act), see Utah Code Ann. §§ 13–5–1 to –18 (2005 & 2008).[1] USA repeatedly alleged that WCF had engaged in a "campaign of attrition" against it and its client companies, and USA sought contractual, general, and punitive damages; prejudgment interest; and costs of the litigation. WCF counterclaimed for breach of contract, alleging that USA had failed to pay more than $600,000 in retrospective premiums for the years 2000, 2001, and 2002. USA answered the counterclaim and admitted that it incurred premiums but disputed the amount owed.

¶4 In August 2005, USA filed a motion for partial summary judgment on the breach of contract issue. WCF subsequently filed motions for partial summary judgment on the issues of cancellation, defamation, the amount of premiums owed by USA, claims management, corporate officer exclusions, and delayed application processing. USA filed various motions in opposition to WCF's partial summary judgment motions.

---

1. Under the Act, USA alleged that WCF had engaged in bad faith and discrimination by charging excessive premiums, violating the sole representative policy provision, issuing notices of cancellation to client companies, delaying application processing, making false statements to the Division of Occupational and Professional Licensing, denying USA online access to claims information, reversing cash flow accommodations, and refusing to write master insurance policies as required by statute.

¶ 5 The trial court denied USA's motion for summary judgment on the breach of contract issue and granted WCF's motions on the issues of cancellation, defamation,[2] claims management, and corporate officer exclusions. The trial court also granted WCF's motion for summary judgment on the issue of premiums due to WCF, but the court denied the motion as to the amount owed, setting that issue for trial. Finally, the trial court denied WCF's motion for partial summary judgment regarding delayed application processing.[3]

¶ 6 A jury trial was conducted in June 2007 to determine the amount of premiums USA owed to WCF. At the conclusion of the evidence, WCF moved for a directed verdict pursuant to rule 50(a) of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 50(a). WCF also sought attorney fees and costs in the amount of $252,604.39 pursuant to Utah Code section 31A–33–115, *see* Utah Code Ann. § 31A–33–115 (2005), and rules 54(d) and 73 of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 54(d), 73. In ruling on the directed verdict, the trial court concluded that "there [was] no substantive evidence to

dispute WCF's evidence of the amounts of premium [USA] owes for the years 2000 and 2001 full terms and the year 2002 partial term to the cancellation date in June 2002." (Footnote omitted.) Accordingly, the trial court granted the motion for a directed verdict that USA owed premiums totaling $720,511.55. Finally, the trial court awarded attorney fees but reduced the amount of the award from that sought by one third, to $147,549.93. Accordingly, the total amount of the judgment in favor of WCF, including costs and prejudgment interest,[4] was $1,166,963.17. USA now appeals.

## ISSUES AND STANDARDS OF REVIEW [5]

¶ 7 USA raises sixteen issues on appeal, many of which pertain to the trial court's grant or denial of certain partial summary judgment motions filed during the course of the litigation. A trial court's grant or denial of summary judgment presents a legal question, which we review for correctness. *See Krantz v. Holt,* 819 P.2d 352, 353 (Utah 1991).

2. USA had filed a motion in opposition to WCF's motion for summary judgment on the issue of defamation. With its motion, USA submitted an affidavit from Tyler Gubler, an owner of one of USA's client companies. USA also submitted deposition testimony from USA employees Terry Ficklin and Jeremy Sewell. USA contended that this testimony proved Linda Baker had defamed USA by informing its client companies that USA no longer had workers' compensation insurance because it had failed to pay premiums owed. WCF responded and submitted an affidavit from Baker, who acknowledged that she had called Gubler to tell him that the Policy had been cancelled. Baker's affidavit mentioned nothing about USA's failure to pay premiums.

The trial court reopened discovery for the limited purpose of giving USA leave to depose Baker if it so chose. USA deposed Baker, who stated only that she had made a courtesy call to Gubler to inform him that "he wasn't insured with [WCF] at that point and . . . to make sure that he had some coverage." After the deposition, WCF renewed its motion for partial summary judgment. The trial court granted the motion, stating that Baker's deposition "add[ed] nothing to support [USA]'s 'defamation' and 'injurious falsehood' claims."

3. In opposing WCF's partial summary judgment motion on the issue of delayed application processing, USA submitted deposition and affidavit testimony in an attempt to demonstrate triable

issues of fact that precluded summary judgment. Although the trial court denied WCF's motion, it also struck certain of USA's exhibits based on a lack of foundation. At the pretrial hearing nearly a year later, the trial court again excluded the exhibits, despite USA's attempt to provide the proper foundation for them.

At the same pretrial hearing, the trial court ordered, at USA's request, that the parties further brief the bad faith claim and claims arising under the Act, including WCF's alleged delay in processing applications. To that end, WCF filed a motion in limine, which USA opposed. After a hearing on the motions, the trial court concluded that its prior summary judgment rulings disposed of any factual basis for a claim under the Act and, accordingly, granted the motion in limine, effectively eliminating the delayed application processing issue.

4. The amount of witness fees and other costs was $32,028.93. The amount of prejudgment interest was $266,872.76.

5. USA raises numerous additional issues in its brief. Because the issues addressed in this opinion are dispositive of the appeal, we do not address USA's other arguments. *See Taghipour v. Jerez,* 2002 UT 74, ¶ 18 n. 4, 52 P.3d 1252 (refusing to address issues beyond the dispositive issue in the case).

¶ 8 Additionally, USA argues that the trial court erred in granting WCF's motion for directed verdict at the close of the evidence presented at trial.

When reviewing any challenge to a trial court's [grant] of a motion for directed verdict, we review the evidence and all reasonable inferences that may fairly be drawn therefrom in the light most favorable to the party moved against, and will sustain the [grant] if reasonable minds could [not] disagree with the ground asserted for directing a verdict.

*Mahmood v. Ross,* 1999 UT 104, ¶ 16, 990 P.2d 933 (internal quotation marks omitted).

¶ 9 USA also contends that the trial court erred in granting WCF's motion in limine on the issue of whether USA had offered sufficient evidence to prove a claim under the Act. " '[A] trial judge is accorded broad discretion in determining how a trial shall proceed in his or her courtroom.' " *Normandeau v. Hanson Equip., Inc.,* 2007 UT App 382, ¶ 29, 174 P.3d 1 (quoting *Tschaggeny v. Milbank Ins. Co.,* 2007 UT 37, ¶ 16, 163 P.3d 615), *cert. granted,* 187 P.3d 232 (Utah Mar. 7, 2008) (No. 20071006). Accordingly, we will overturn a trial court's decision to grant a motion in limine only if it has abused its discretion in so doing. *See Tschaggeny,* 2007 UT 37, ¶ 16, 163 P.3d 615.

¶ 10 Finally, USA argues that the trial court erred in granting an award of attorney fees because it failed to make specific findings regarding which fees were compensable and which were non-compensable. "[W]hether the [trial court's] findings are sufficient to support the award [of attorney fees] is a question of law reviewed for correctness." *Foote v. Clark,* 962 P.2d 52, 55 (Utah 1998).

## ANALYSIS

### I. Motions for Partial Summary Judgment

### A. Breach of Contract/Cancellation of the Policy

¶ 11 USA argues that the trial court erred when it denied USA's motion for partial sum-mary judgment on the question of whether WCF breached the insurance contract by cancelling the Policy in June 2002 for premiums owed for the 2000 and 2001 plan years.[6] More specifically, USA contends that the trial court erred by (1) disregarding undisputed facts which demonstrate that the 2000, 2001, and 2002 policies are three separate contracts and not one contract with annual renewals and (2) misinterpreting the statutes controlling cancellation of insurance policies. We address each of these arguments in turn.

¶ 12 First, USA contends that the undisputed facts demonstrate that the 2000, 2001, and 2002 policies constitute new and separate contracts because each contained different pricing terms and covered different client companies. USA argues that, accordingly, it was improper for WCF to cancel the 2002 contract for premiums owed for entirely different contracts, i.e., the 2000 and 2001 contracts. In support of this argument, USA cites authority for the proposition that if the terms and conditions are different, "the [annual] renewal of a policy is, in effect, a new contract." *American Auto Guardian, Inc. v. Acuity Mut. Ins. Co.,* 548 F.Supp.2d 624, 627–28 (N.D.Ill.2008) (internal quotation marks omitted).

¶ 13 This line of authority, however, is distinguishable from the facts of this case. Unlike the cases cited by USA, the Policy here is *retrospective* in nature, that is, premiums are collected six months after the end of a plan year instead of at the beginning of the plan year. Accordingly, under the terms of the Policy, the majority of premiums due in June 2002 reflected amounts owed for the 2001 plan year as well as any amounts still owing for the 2000 plan year. Because the retrospective nature of the Policy is distinctly different from the insurance policies at issue in cases cited by USA, we conclude that these cases are ultimately irrelevant to our analysis.

¶ 14 Furthermore, beyond citing to the distinguishable legal authority, USA fails to develop its argument or provide any meaningful analysis in support of its conten-

---

6. Although USA also owes premiums for the first six months of 2002, it does not address in its brief how the 2002 arrearage impacts its breach of contract argument.

tion that WCF breached the insurance contract when it cancelled the Policy in June 2002 for premiums owed for 2000, 2001, and a portion of 2002. Instead, USA simply states that such cancellation was improper.

> [A] brief is inadequate if it merely contains bald citations to authority without development of that authority and reasoned analysis based on that authority. An appellate court is not a depository in which a party may dump the burden of argument and research. A petitioner must plead his claims with sufficient specificity for [an appellate] court to make a ruling on the merits. Further, ... [the appellate court] will not assume an appellant's burden of argument and research.

*Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903 (alterations, citations, and internal quotation marks omitted). USA has failed to develop its argument beyond mere citation to legal authority and, accordingly, the issue is inadequately briefed. *See id.* We therefore assume for the purposes of this opinion that the trial court correctly concluded that the Policy was one policy with annual renewals and not three separate contracts.[7]

¶ 15 We also determine that WCF complied with the statutory requirements of cancellation found in the Utah Code, *see* Utah Code Ann. § 34A–2–205 (Supp.2008), as well as the cancellation provisions contained in the Policy itself. Accordingly, we conclude that the trial court correctly granted summary judgment in favor of WCF on the issue of cancellation.

¶ 16 Workers' compensation insurance is governed by the Workers Compensation Act, *see id.* §§ 34A–2–101 to –905, as well as the Insurance Code, *see* Utah Code Ann. §§ 31A–1–101 to –41–306 (2005 & Supp. 2008). The Insurance Code contains provisions that govern the cancellation of an insur-ance policy, and those provisions apply to workers' compensation insurance. *See id.* § 31A–21–303(1) (Supp.2008) (stating that cancellation provisions in this section apply to "all policies of insurance"). Utah Code section 31A–21–303(2)(b)(ii)(A) provides that an insurer is entitled to cancel ·an insurance policy for "nonpayment of a premium when due." *Id.* § 31A–21–303(2)(b)(ii)(A). As of June 2002, USA owed premiums to WCF for, at a minimum, the years 2000 and 2001. Because USA failed to pay those premiums, WCF was justified in cancelling the Policy. *See id.*

¶ 17 This conclusion is also consistent with the plain language of the Policy. Specifically, the section of the Policy which governs cancellation provides, "If we cancel *for nonpayment of premium,* the maximum retrospective premium will be based on the standard premium for the rating plan period." (Emphasis added.) Clearly, the parties contemplated that WCF could cancel the Policy if USA failed to pay its cumulative premiums.

¶ 18 Furthermore, contrary to USA's contention ·otherwise, we conclude that WCF complied with the statutory notice of cancellation. Utah Code section 31A–21–303(2)(c)(ii) requires a ten-day notice for cancellation of an insurance policy due to nonpayment of premiums. *See id.* § 31A–21–303(2)(c)(ii). WCF sent USA a notice of cancellation on May 15, 2002, and a subsequent notice on May 24, 2002; the effective date of cancellation was June 27, 2002. Accordingly, WCF provided USA in excess of forty days notice of cancellation, which clearly satisfies the statutory notice requirements.

¶ 19 In sum, for the purposes of this opinion, we agree with the trial court's conclusion that the Policy was one continuous policy and not three separate contracts. We also conclude that the trial court correctly denied

---

7. This position is consistent with the deposition testimony of USA's broker, Jeffrey Utz, as well as WCF's expert witness, Robert Wilcox. For example, Utz agreed that the Policy was a "renewal policy with slightly different terms [each year]," and Wilcox opined that "[t]he policy purchased ... from WCF was a single policy that provided for an initial one year period and the right to renew the policy annually." Moreover, our position is consistent with Utah Code section 34A–2– 205, which provides that once an insurance carrier has assumed the workers' compensation liability for an employer, that coverage "is in effect from *inception until cancelled.*" Utah Code Ann. § 34A–2–205(1)(b) (Supp.2008) (emphasis added). The plain language of this section therefore implies that a workers' compensation insurance policy is one continuous policy until it is properly cancelled.

USA's motion for summary judgment on the breach of contract issue because WCF was statutorily entitled to cancel the Policy for nonpayment of premiums. The trial court also correctly concluded that WCF gave proper statutory notice prior to canceling the Policy. Accordingly, we also determine that the trial court did not err in granting partial summary judgment in favor of WCF on the issue of cancellation.

## B. Defamation

¶ 20 USA also contends that the trial court improperly weighed the evidence in granting summary judgment in favor of WCF on the issue of defamation. Again, we disagree.

¶ 21 In opposing WCF's motion for summary judgment, USA submitted the affidavit of Tyler Gubler, an owner of one of USA's client companies. In his affidavit, Gubler stated that he had received a call from WCF employee Linda Baker, who informed him that he no longer had workers' compensation insurance coverage through USA. Gubler's affidavit contained nothing about Baker's purportedly defamatory statement—that USA had failed to pay premiums owed. Nonetheless, USA contended that the affidavit proved Baker had made slanderous remarks to its client companies.

¶ 22 In response, WCF submitted a reply memorandum and attached an affidavit from Baker. Baker's affidavit was consistent with Gubler's testimony, that is, Baker admitted that she had contacted Gubler to inform him that USA no longer had workers' compensation insurance with USA, but her affidavit said nothing regarding USA's failure to pay premiums.

¶ 23 USA moved to strike Baker's affidavit, but the trial court instead gave USA the opportunity to depose Baker. USA deposed Baker, who again testified that the call to Gubler was only a courtesy call to inform him of the cancellation and to make sure he was covered. The trial court subsequently concluded that "the Baker deposition add[ed] nothing to support [USA]'s 'defama-

tion' and 'injurious falsehood' [8] claims," and granted WCF's motion for summary judgment. We agree.

In order to constitute slander per se, without a showing of special harm, it is necessary that the defamatory words fall into one of four categories: (1) charge of criminal conduct, (2) charge of a loathsome disease, (3) charge of conduct that is incompatible with the exercise of a lawful business, trade, profession, or office; and (4) charge of the unchastity of a woman.

*Allred v. Cook*, 590 P.2d 318, 320 (Utah 1979) (emphasis omitted). At the time Baker allegedly made the defamatory statements, it was a class A misdemeanor for a professional employment organization to fail to pay workers' compensation premiums. *See* Utah Code Ann. §§ 58–59–501(8), –503(2) (Supp. 2002) (repealed 2008). Accordingly, USA contends on appeal that Baker engaged in slander per se when she informed Gubler that USA no longer had workers' compensation insurance because such failure constituted criminal conduct. This claim is without merit.

¶ 24 Upon review of the record, we conclude that there is simply no evidence that Baker accused USA of failing to pay its workers' compensation insurance premiums or mentioned to Gubler any such failure to pay. Instead, she correctly informed Gubler that his company no longer had coverage with WCF through USA and offered to help him obtain replacement coverage. Moreover, even if there was evidence that Baker had told Gubler that USA had not paid its premiums—which there is not—the statement would not have been false because USA had, in fact, defaulted on premium payments. "[T]ruth is an absolute defense to an action for defamation." *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 57 (Utah 1991). Accordingly, we agree that the Baker deposition added nothing to USA's claim and conclude that the trial court correctly granted summary judgment in favor of WCF on the issue of defamation.

**8.** USA does not brief the issue of injurious falsehood on appeal. Accordingly, we do not address it.

## C. Corporate Officer Exclusions

¶ 25 Utah Code section 34A–2–104(4) provides that companies may elect to exclude corporate officers from workers' compensation coverage. *See* Utah Code Ann. § 34A–2–104(4) (2005). In order to make such an election, however, written notice must be served on the insurance carrier. *See id.* § 34A–2–104(4)(b). The exclusion declaration must also name each corporate officer the company wishes to exclude from coverage. *See id.*

▇▇▇ ¶ 26 In its First Amended Complaint, USA alleged that WCF had engaged in price discrimination because, among other things, it had improperly assessed premiums for corporate officers who desired to be excluded from coverage pursuant to Utah Code section 34A–2–104(4). WCF filed a motion for partial summary judgment on all allegations related to corporate officer exclusions, which the trial court granted. USA now argues that the trial court erred because USA offered evidence that the "course of dealing" between WCF and USA was to recognize certain corporate officer opt-outs despite USA's failure to submit corporate officer exclusion forms.

¶ 27 Upon review of the record, we have discovered no evidence suggesting a course of dealing between WCF and USA that deviated from the statutory requirement of written notice before corporate officer opt-outs would become effective. Rather, the evidence demonstrates the opposite. For example, WCF presented evidence that USA's broker had ordered WCF to assume coverage for corporate officers unless written exclusion documentation was received. Moreover, USA's own witnesses testified that the normal procedure was to provide opt-out information forms to its broker before opt-outs would be factored into the premium calculations. The trial court thus correctly ruled that "Utah Code Annotated § 34A–2–104[ (4) ] sets forth the procedure to exclude corporate officer exclusions and that said procedure was not followed [by USA]." Summary judgment in favor of WCF was therefore appropriate.

## D. Delayed Application Processing

▇▇▇ ¶ 28 WCF filed a motion for partial summary judgment on the question of whether it unreasonably delayed the processing of applications for replacement policies after cancelling the Policy. The trial court determined there was a disputed factual issue and denied WCF's motion. Nonetheless, USA appeals the trial court's judgment on the ground that it improperly struck some of USA's exhibits based on a lack of foundation. Notwithstanding our observations in footnote three, we conclude that this issue is inadequately briefed. Indeed, USA provides no authority or legal analysis to support its argument; instead, USA simply summarizes the evidence and laments that the evidence should not have been excluded because it was necessary to prove the bad faith and unfair practices claims. Because the issue is inadequately briefed, we do not address it. *See Anderson v. Taylor*, 2006 UT 79, ¶ 25, 149 P.3d 352 (declining to address an issue that was inadequately briefed).

## II. Directed Verdict on Amount of Premium Owed

¶ 29 USA contends that the trial court erred in directing a verdict in favor of WCF in the amount of $720,511.55. Specifically, USA argues that the trial court erred because (1) USA presented sufficient evidence to create a disputed issue of fact regarding WCF's purported failure to apply experience modifiers to the premiums owed,[9] which failure affected the calculation of those premiums and (2) the court improperly limited the testimony of USA's designated expert, Steven Pfieffer.[10] For the following reasons, both contentions fail.

---

**9.** Experience modifiers are factors applied to premium calculations, which factors may result in lower or higher premiums depending on the insureds' loss history within the prior year.

**10.** USA also argues that the trial court abused its discretion by restricting the testimony of Terry Ficklin. USA cites no authority or legal analysis for this proposition. Accordingly, we do not address it. *See Anderson v. Taylor*, 2006 UT 79, ¶ 25, 149 P.3d 352.

¶ 30 First, we disagree that USA presented sufficient evidence to raise a disputed issue of fact on the amount of premium it owed to WCF. At trial, WCF admitted numerous exhibits which precisely identified the premium amounts owed; these exhibits were accompanied by appropriate foundational testimony from qualified witnesses. USA, on the other hand, introduced only one document during discovery that raised a question about experience modifiers. That document—a letter from USA's employee Terry Ficklin to WCF's Ben Llaneta—alleged that a recent audit revealed that five of USA's 300 client companies who should have been assigned experience modifiers had not been assigned them. At trial, however, Ficklin testified that he could not remember the names of these client companies, nor did he testify as to anything specific about his subsequent conversations regarding the experience modifiers.

¶ 31 It is well established "that a court ... can properly [take a case from the jury] when the matter is so plain that there really is no conflict in the evidence upon which reasonable minds could differ." *Flynn v. W.P. Harlin Constr. Co.,* 29 Utah 2d 327, 509 P.2d 356, 361 (1973). Such is the case here. Even viewing the evidence in a light most favorable to USA, as we must, we conclude that "reasonable minds could [not] disagree with the ground asserted for directing [the] verdict [in favor of WCF]." *Mahmood v. Ross,* 1999 UT 104, ¶ 16, 990 P.2d 933 (internal quotation marks omitted). Indeed, the evidence presented by USA is mere speculation and is thus insufficient to create a disputed issue of fact on the issue of premium calculation. Accordingly, we affirm the trial court's grant of a directed verdict in the amount of $720,511.55.

¶ 32 Second, we also disagree with USA's argument that the trial court erred in prohibiting Pfieffer's testimony regarding the impact of experience modifiers on the calculation of premiums. It is true that USA designated Pfieffer as an expert witness and that he submitted expert reports on a variety of issues related to the litigation. We find no place in the record, however, where Pfieffer offered any opinion or evidence on the issue of experience modifiers during discovery. Accordingly, the trial court properly restricted Pfieffer's testimony to the areas of expertise he disclosed in discovery. *See generally State v. Holm,* 2006 UT 31, ¶ 89, 137 P.3d 726 ("A decision to admit or exclude expert testimony is left to the discretion of the trial court, and that decision will not be reversed unless it constitutes an abuse of discretion.").

## III. Motion in Limine

¶ 33 At a pretrial hearing, USA's counsel suggested that the parties further brief the issues of bad faith and claims under the Act. At the request of the trial court, WCF prepared a motion in limine that addressed those issues. Despite specifically requesting further briefing on the issues, USA nonetheless moved to strike WCF's motion. After consideration of the motions, the trial court granted WCF's motion in limine. USA now argues that this ruling was in error. We disagree.

¶ 34 The trial court concluded that due to the summary judgment rulings against USA on the issue of cancellation and the directed verdict on the amount of premiums owed, there were no factual issues remaining that would permit consideration by the jury on the claimed breach of the implied covenant of good faith and fair dealing. On appeal, we have affirmed the trial court's rulings on cancellation as well as the amount of premiums owed. Accordingly, we also affirm the trial court's determination that there was no remaining evidence to support USA's bad faith claim. *See generally Smith v. Grand Canyon Expeditions Co.,* 2003 UT 57, ¶ 22, 84 P.3d 1154 ("The reach of the implied covenant of good faith and fair dealing extends no further than the ... express terms of the contract.").

¶ 35 As to the parties' arguments regarding the applicability of the Act to the present action, the trial court concluded that "[the] Act does not apply in this context[because it was] intended to govern industries which, unlike the workers' compensation insurance industry, are unregulated." The trial court noted, however, that "even if the Act were applicable, the Court [was] satisfied that given its prior rulings [on, e.g., delayed applica-

tion processing, cancellation, corporate officer exclusions, and claims management], there are no facts upon which [USA] could establish a violation of the Act." [11] We agree.

¶ 36 USA's claims underlying alleged violations of the Act were all addressed by the trial court in various summary judgment rulings. On appeal, we have affirmed the trial court's rulings, either on their merits or because they were inadequately briefed or not raised.[12] The trial court's rulings below and our subsequent affirmances on appeal dispose of claims that would have provided the factual underpinnings for any violation of the Act. Accordingly, we affirm the trial court's ruling that even were the Act applicable, there were no facts that remained to support an unfair practices claim.[13]

## IV. Attorney Fees

¶ 37 Finally, USA challenges the trial court's grant of attorney fees awarded to WCF in the amount of $147,549.93. USA does not challenge the reasonableness of the attorney fees. Instead, USA contests the "lack of findings" and evidence in support of the award. Accordingly, we do not address the reasonableness of the fees awarded but address the other remaining issues in order.

## A. Findings

¶ 38 WCF filed a Verified Memorandum of Costs and Attorney[ ] Fees, seeking $267,471.09 pursuant to Utah Code section 31A-33-115, see Utah Code Ann. § 31A-33-115 (2005). In response, USA filed a Motion to Tax Costs, Attorney[ ] Fees, and Costs of Collection and argued that all fees and costs must be allocated between statutorily compensable and non-compensable causes of action. At the hearing on USA's motion to tax, the trial court ruled from the bench that any such allocation would be impossible due to the complexity and length of the litigation.

The trial court subsequently entered its Findings of Fact, Conclusions of Law and Order awarding fees in the reduced amount of $147,549.93.

¶ 39 USA claims that the trial court made no factual findings to underpin its allocation of the attorney fees. To the contrary, the trial court entered twenty-seven detailed factual findings supporting the award and attempted to reasonably allocate the fees between those expended for non-compensable claims and those expended for compensable claims. Specifically, the trial court found the following:

3. The Court finds there [is] a basis for allocation of attorney[ ] fees between those incurred defending the claims in [USA]'s First Amended Complaint and the prosecution of WCF's claim for collection of premiums owed in its counterclaim. However, the Court finds that there is no bright line of demarcation between the two....

4. Therefore, the Court finds the reasonable allocation to be 1/3 of the fee is apportioned to defending allegations in [USA]'s First Amended Complaint that did not overlap its defenses to WCF's Counterclaim. 2/3 of the attorneys[ ] fees are allocated to the collection of the premium owed. WCF is entitled to recover 2/3 of $221,214.28 of the fees it has incurred. The amount of fee allowed is therefore $147,549.93.

(Footnote omitted.)

¶ 40 USA requests that we remand the case for the trial court to enter more specific findings regarding allocation. Given the preemptive nature of USA's lawsuit, if the trial court were to revisit this issue, it may well determine that USA owes one hundred percent of the attorney fees requested by WCF. See generally Utah Code Ann. § 31A-33-115 (entitling WCF to all reasonable attorney fees and court costs incurred

---

11. The Act proscribes "[u]nfair methods of competition in commerce or trade," Utah Code Ann. § 13-5-2.5(1) (2005), including unfair pricing discrimination, see id. § 13-5-3(a).

12. For example, we have affirmed the trial court's decisions regarding cancellation and corporate officer exclusions, while the issues of delayed processing and claims management were,

respectively, inadequately briefed and not raised on appeal.

13. We are unconvinced that the Act applies to the workers' compensation insurance industry. However, our affirmance of the trial court's grant of the motion in limine is dispositive; accordingly, we do not reach the broader issue of whether the Act applies in this context.

collecting delinquent premiums). Accordingly, even if the trial court's findings only marginally comply with our current jurisprudence regarding the award of attorney fees, *see Cottonwood Mall Co. v. Sine,* 830 P.2d 266, 268–69 (Utah 1992) (noting that while trial courts have discretion regarding the award of attorney fees, they also have a duty to enter specific findings based on the evidence presented to support the award), USA would likely fare worse if the issue were remanded, and thus, the error, if any, is harmless.

B. Evidence

■ A party who requests an award of attorney fees has the burden of presenting evidence sufficient to support an award. Except in the most simple cases, the evidence should include the hours spent on the case, the hourly rate or rates charged for those hours, and usual and customary rates for such work.

*Id.* at 268.

■ ¶ 41 Despite USA's contentions otherwise, we conclude that counsel for WCF met its evidentiary burden to support the requested award. Indeed, WCF provided specific details regarding the hours spent on the case, including the numerous documents prepared; appearances made; depositions taken; and meetings attended. WCF also documented the hourly rates charged, as well as the usual and customary rates for litigation of this nature. Accordingly, we conclude that there was a sufficient evidentiary basis for the trial court to determine the attorney fees award.

## CONCLUSION

¶ 42 We conclude that the trial court did not err when it denied USA's motion for summary judgment on the breach of contract issue. Furthermore, we conclude that the trial court correctly granted WCF's motion for summary judgment on the issue of cancellation because WCF was statutorily entitled to cancel the policy for USA's failure to pay premiums owed. We also affirm the trial court's summary judgment determinations as to defamation, corporate officer exclusions, and delayed application processing.

Moreover, we determine that the trial court did not err in directing a verdict in favor of WCF, nor did it err in granting WCF's motion in limine regarding the bad faith and the Act claims. Finally, we affirm the award of attorney fees and costs to WCF because the trial court made adequate findings regarding allocation based on evidence provided by WCF.

¶ 43 WE CONCUR: RUSSELL W. BENCH and GREGORY K. ORME, Judges.