Lewis S. **COHEN**, Plaintiff,

v.

**WRAPSOL ACQUISITION, LLC, and Otter Products, LLC d/b/a Otterbox, Defendants.**

**Case No. 2:15–cv–725–DB**

United States District Court, D. Utah, Central Division.

Signed April 11, 2016

---

Harry L. Manion, III, Katharine A. Dennis, Timothy J. Fazio, Manion Gaynor & Manning LLP, Boston, MA, Robert S. Clark, Bryan S. Johansen, Parr Brown Gee & Loveless, Salt Lake City, UT, for Plaintiff.

Adam Kenji Richards, James S. Jardine, Ray Quinney & Nebeker, Salt Lake City, UT, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Dee Benson, United States District Judge

This matter is before the Court on Defendants' Motion to Dismiss. [Dkt. 23]. The Court held a hearing on March 15, 2016. Plaintiff was represented by Brian Johansen and Timothy Fazio. Defendants were represented by James Jardine and Adam Richards. Having considered the relevant facts and law, the Court enters this Order granting Defendants' motion.

## BACKGROUND

Plaintiff, Lewis S. Cohen ("Plaintiff"), is one of the founders of Wrapsol, a company that manufactured and sold protective film wraps, privacy shields and grip pads for

mobile telephones and portable electronic devices. Defendant, Otter Products, LLC d/b/a OtterBox ("OtterBox"), is a leader in the protective accessories market for mobile telephones and portable electronic devices. Defendant, Wrapsol Acquisition, LLC, is a wholly-owned subsidiary of OtterBox, created for the purpose of purchasing Wrapsol. On November 8, 2012, the parties entered into an Asset Purchase Agreement ("APA"), whereby OtterBox acquired Wrapsol.

Pursuant to the APA, OtterBox would operate Wrapsol as a separate division of OtterBox ("the Wrapsol Division").[1] APA§ 3.2.1. In consideration for purchasing Wrapsol, OtterBox assumed Wrapsol's liabilities and agreed to pay the Sellers: (1) $2,000,000; (2) certain payments based on the terms of two promissory notes; and (3) potential "Contingent Payments." APA§ 3.1. The quarterly Contingent Payments depend on whether the Wrapsol Division achieves a certain amount of "Realized Gross Profits" ("RGPs") in each "Fiscal Quarter" throughout the "Earn–Out Period" ending September 30, 2016.[2]

Under the terms of the APA, Sellers are entitled to receive Contingent Payments "[i]f, and only to the extent that, Realized Gross Profits of the Wrapsol Division . . . for a Fiscal Quarter equal or exceed $1,200,000." APA§ 3.1.2.1. If that threshold is met, the Contingent Payment equals 17.5% of that quarter's excess RGPs. The APA states that "if Realized Gross Profits . . . do not exceed $1,200,000, no Continent Payment is earned or payable." APA § 3.1.2.1.

The agreement specifically sets forth how the quarterly RGPs are to be determined and calculated. APA§ 3.1.2.2. The APA also provides the means for Sellers to object to the quarterly RGP calculations, examine in detail the books and records, and obtain an independent accounting. APA § 3.1.2.2. If Sellers do not timely object, OtterBox's calculation of each quarterly RGP "shall be final." *Id.*

Regarding management of the Wrapsol Division, the APA states that "Sellers . . . acknowledge and agree that from Closing [OtterBox] owns and controls . . . the [Wrapsol] Business and, therefore, is entitled to operate the Business in whatever manner Purchaser determines to be in Purchaser's best interest." APA § 3.1.1.4. On September 4, 2015, OtterBox formally closed the Wrapsol Division.

Plaintiff filed this action, individually and as Seller Representative, against Defendants, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and seeking an accounting and indemnity. [Dkt. 2]. Defendants move the Court to dismiss each cause of action, as discussed below.

## I. BREACH OF CONTRACT

Plaintiff asserts OtterBox breached the APA in three specific ways, two of which are at issue in this motion.[3] First, Plaintiff alleges OtterBox operated and managed the Wrapsol Division in a way that failed to maximize RGPs, to the Sellers' detriment. Second, Plaintiff alleges Otter-

---

1. Plaintiff became a consultant to OtterBox. Three other former Wrapsol executives entered employment agreements with the newly founded Wrapsol Acquisition, LLC.

2. The terms Realized Gross Profits, Fiscal Quarter, and Earn–Out Period are specifically defined in the APA. APA § 3.2.

3. Plaintiff also alleges that OtterBox breached the APA by closing the Wrapsol Division before the end of the Earn–Out Period, September 30, 2016. Defendants did not move to dismiss that particular breach of contract allegation.

Box inaccurately calculated the quarterly RGPs.

### A. Management of Wrapsol Division

■ Plaintiff claims OtterBox executives changed the marketing and packaging of Wrapsol products, raised their prices, and ended contracts in favor of incorporating the Wrapsol products into existing OtterBox contracts. According to Plaintiff, as a result, the Wrapsol Division's RGPs declined. While Plaintiff points to these management decisions as negatively impacting the Wrapsol Division's profits, the APA does not impose on Defendants a duty to maximize RGPs. The parties, both sophisticated businesses, negotiated and agreed, as expressly stated in the APA, that OtterBox is entitled to operate the Wrapsol Division "in whatever manner Purchaser determines to be in Purchaser's best interest." APA § 3.1.1.4. Under the APA's express terms, Contingent Payments are not guaranteed. APA § 3.1.2.1. The APA expressly gives Otter-Box complete discretion in the management and operation of the Wrapsol Division.

■ "Neither of the parties, nor the court has any right to ignore or modify conditions which are clearly expressed merely because it may subject one of the parties to hardship, but they must be enforced in accordance with the intention as manifested by the language used by the parties to the contract." *Ephraim Theatre Co. v. Hawk,* 7 Utah 2d 163, 321 P.2d 221, 223 (1958); *Dixon v. Pro Image, Inc.,* 987 P.2d 48 (Utah 1999)(If language within four corners of contract is unambiguous, parties' intentions are determined from the plain meaning of contractual language, and contract may be interpreted as a matter of law.); *Willard Pease Oil & Gas Co. v.*

*Pioneer Oil & Gas Co,* 899 P.2d 766, 770 (Utah 1995).

### B. RGP Calculations

■ Plaintiff contends OtterBox miscalculated the quarterly RGPs in violation of the APA. Specifically, Plaintiff alleges OtterBox misallocated costs to the Wrapsol Division and failed to include in the RGPs, revenues from a Wrapsol product known as Alpha Glass. To date, the Wrapsol Division has yet to earn a Contingent Payment.

OtterBox argues this claim should be dismissed because Sellers have waived their right to challenge OtterBox's past quarterly RGP calculations. The APA gives Sellers ten days following receipt of each quarter's RGP calculations to object to OtterBox's accounting. APA § 3.1.2.2. If Sellers make a timely objection, they may "examine the books and records of the Wrapsol Division" and may obtain an audit by an independent accounting firm. *Id.* If Sellers do not timely object, OtterBox's RGP determinations "shall be final." *Id.*

Sellers did not object to any of the quarterly calculations. OtterBox asserts that had Sellers engaged in the inspection and accounting procedure set forth in the APA, especially given that three former Wrapsol executives work for OtterBox, they would have become aware of the discrepancies they now allege. Unfortunately for Sellers, however, under the express terms of the APA, they waived their right to challenge the past calculations. *See Dixon,* 987 P.2d at 48; *Willard Pease Oil & Gas,* 899 P.2d at 770. Accordingly, Defendants' motion to dismiss Plaintiff's breach of contract cause of action, to the extent based on OtterBox's management of the Wrapsol Division and miscalculation of the RGPs is hereby GRANTED.[4]

---

4. Plaintiff's allegation in the Complaint that

Defendants' closure of the Wrapsol Division

## II. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

■ Plaintiff contends OtterBox breached the implied covenant of good faith and fair dealing by its management and closure of the Wrapsol Division as well as by its RGP calculations. Under the implied covenant of good faith and fair dealing, each party to a contract "impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199 (Utah 1991).

■ Defendants assert their conduct is consistent with the express provisions of the APA and therefore, there can be no breach of good faith and fair dealing. "[I]t goes without saying that where a party to a contract takes action consistent with the contract, there is no breach" of the implied covenant. *Global Fitness Holdings, LLC v. Federal Recovery Acceptance, Inc.*, 127 F.Supp.3d 1176 (D.Utah 2015); *Smith v. Grand Canyon Expeditions Co.*, 2003 UT 57, ¶ 22, 84 P.3d 1154 ("The reach of the implied covenant of good faith and fair dealing extends no further than the purposes and express terms of the contract"). "It is settled law that the covenant of good faith and fair dealing cannot circumvent the plain language of the agreement." *Best Rate Towing & Repair, Inc. v. Ziplocal, L.P.*, 2012 WL 627668, at *2–5 (D.Utah Feb. 24, 2012)(unpublished); *Young Living Essential Oils, LLC v. Marin*, 266 P.3d 814 (Utah 2011)("Where the parties themselves have agreed to terms that address the circumstance that gave rise to their dispute, ... the court has no business injecting its own sense of what amounts to 'fair dealing.' ").

prior to September 30, 2016 breached the

Courts "have set a high bar" for involving the implied covenant and have given it "a limited role." *Young Living Essential Oils*, 266 P.3d at 814; *Global Fitness Holdings*, 127 F.Supp.3d at 1196 ("[C]ourts will not interpret the implied covenant of good faith and fair dealing to make a better contract for the parties than they made for themselves.").

### A. Management of Wrapsol Division

■ Plaintiff contends that OtterBox's operation of the Wrapsol Division necessarily carries with it a good faith effort to sustain, develop and grow the Wrapsol Business. He argues that OtterBox's marketing, packaging, price-setting and customer strategies have been counterproductive to maximizing RGPs. The express language of sections 3.1.1.4 and 3.1.2.1 of the APA, however, as discussed above, gives OtterBox the right to operate the Wrapsol Division according to its own interest, and provides that Contingent Payments are not guaranteed.

■ The implied covenant cannot "create rights and duties inconsistent with express contractual terms" or "compel a contractual party to exercise a contractual right to its own detriment for the purpose of benefitting another party to the contract." *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 45, 104 P.3d 1226; *Young Living Essential Oils*, at ¶ 10; *Global Fitness Holdings*, 127 F.Supp.3d at 1196 (Courts will not "construe the covenant to establish new, independent rights or duties not agreed upon by the parties."). A party cannot rewrite the terms of the contract to make it more favorable, using the implied covenant. *Best Rate Towing*, at *4.

### B. Closure of Wrapsol Division

■ Plaintiff asserts OtterBox's closure of the Wrapsol Division prior to Sep-

APA remains.

tember 30, 2016, violates the implied covenant of good faith and fair dealing.[5] The APA provides that the Contingent Payments are payable through September 30, 2016. APA § 3.2.1. It states, "[d]uring the period beginning on the Closing and ending on September 30, 2016 (such period, the "Earn–Out Period"), the Business shall be operated as a distinct business unit of Purchaser (the "Wrapsol Division") ...." Plaintiff contends OtterBox was therefore required to keep the Wrapsol Division in operation until that date. It is OtterBox's position that section 3.1.1.4 gives it the discretion to close the Division if it believed that operating it was no longer in OtterBox's best interests. Either way, the express terms of the APA, not the implied covenant, control this issue. *See Young Living Essential Oils*, at ¶ 10.

### C. Calculating RGPs

■ Because the APA sets forth explicit terms regarding the parties' calculations of and objections to the RGPs, this dispute is, as is the closure of the Wrapsol Division, governed by those express terms, and there is therefore no implicit covenant. As discussed above, under the express terms of the APA, by failing to timely object, Sellers waived their right to challenge the accounting of the RGPs. The Court, therefore, finds that the implied covenant does not apply here.

Defendants' motion to dismiss Plaintiff's cause of action for breach of implied covenant of good faith and fair dealing is hereby GRANTED.

### III. ACCOUNTING

Plaintiff seeks by this cause of action, an accounting of Contingent Payments allegedly owed under the APA. Plaintiff argues

Sellers have the right to an accounting of the quarterly RGPs: (1) under the terms of the APA § 3.1.2.2; and (2) under Utah law.

Defendants contend Plaintiff has waived his right to assert a contractual claim for accounting. As discussed above, if Sellers do not make a timely objection under section 3.1.2.2, the RGP calculations "shall be final." Consequently, pursuant to the express terms of the APA, Sellers waived their right to seek an accounting of past quarterly RGPs.

■ Plaintiff's claim for the equitable remedy of accounting must be dismissed because Sellers had an adequate remedy at law. In Utah, an equitable remedy of accounting exists in "the absence of an adequate remedy at law." *Failor v. MegaDyne Med. Prods., Inc.*, 2009 UT App 179, ¶ 14, 213 P.3d 899 *(quoting Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962)); *Thorpe v. Washington City*, 2010 UT App 297, ¶ 28, 243 P.3d 500 ("when seeking an equitable remedy, a plaintiff must affirmatively show a lack of an adequate remedy at law on the face of the pleading."). The APA plainly provides Sellers the opportunity to obtain an accounting of the Wrapsol Division's RGPs. Therefore, the provisions of the APA govern the parties' dispute. Having failed to invoke the legal remedy available, Plaintiff cannot seek relief in equity. *Cf. Ockey v. Lehmer*, 2008 UT 37, ¶ 48, 189 P.3d 51.

Defendants' motion to dismiss Plaintiff's cause of action for accounting under the agreement and in equity is GRANTED.

### IV. INDEMNITY

Plaintiff claims OtterBox must indemnify Sellers for damages resulting from its

---

**5.** Plaintiff also asserts in the Complaint that the closure violates the express terms of the APA. OtterBox has not moved to dismiss that breach of contract claim.

alleged breaches of the APA. *See* APA § 8.5.2. To the extent Plaintiff's claims for breach of contract are dismissed above, the Court hereby GRANTS Defendants' motion to dismiss Plaintiff's claim for indemnity. Remaining is Plaintiff's cause of action for indemnity based on his claims for breach of contract for Defendants' closing the Wrapsol Division before September 30, 2016.

## CONCLUSION

Defendants' Motion to Dismiss is hereby GRANTED.

IT IS SO ORDERED.