**2018 UT App 135**

## THE UTAH COURT OF APPEALS

RANDY R. HAHN,
Appellant,
*v.*
ADRIENNE R. HAHN,
Appellee.

Opinion
No. 20170303-CA
Filed July 6, 2018

Third District Court, Salt Lake Department
The Honorable Ryan M. Harris
Nos. 154901148 and 174100261

Randy R. Hahn, Appellant Pro Se

Kevin McGaha, Attorney for Appellee

Sean D. Reyes and Erin T. Middleton, Attorneys for
Amicus Curiae Utah Attorney General[1]

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES GREGORY K. ORME and DAVID N. MORTENSEN
concurred.

CHRISTIANSEN, Judge:

¶1    After a bench trial, the trial court modified the parties'
divorce decree and parenting plan, granting primary physical
custody of the parties' minor children to Adrienne R. Hahn
(Mother) and ordering Randy R. Hahn (Father) to pay child

---

1. The State of Utah responded to this appeal as amicus curiae
because Appellant Randy R. Hahn raised several challenges to
the constitutionality of state statutes. We commend counsel
representing the State for providing a well-researched and
succinct amicus brief.

support. Father appeals, raising several challenges, including the constitutionality of certain Utah Code provisions governing custody and child support. We affirm and remand for the purpose of determining Mother's attorney fees incurred on appeal, which award we limit as described below.

BACKGROUND

¶2 Mother and Father divorced in New Mexico, entering into a marital settlement agreement and stipulated parenting plan, eventually agreeing to the entry of a final divorce decree in 2014. The parenting plan provided that the parties would share joint physical and legal custody of their minor children. The decree did not impose a child support obligation on either party. Instead, the parties agreed that no child support would be paid by either party for one year following entry of the decree so that each could obtain employment. Following this deferment, the parties agreed to calculate child support using New Mexico Child Support guidelines.

¶3 Mother relocated to Utah and in 2015, registered the decree, parenting plan, and related orders with the Third District Court in Salt Lake County. She then filed a petition to modify those orders. Father filed an answer and counter-petition through counsel, but he subsequently filed an amended answer pro se. Both parties asserted that a substantial material change in circumstances justified modification of the original decree and orders.

¶4 In his amended answer, Father also raised general constitutional challenges to Utah's child custody and support statutes. Father later filed a motion for declaratory judgment in the modification proceeding, alleging many of the same constitutional challenges. Mother responded with a request for temporary orders, including a request for child support of $1,680 per month and attorney fees. Father responded and argued that

no child support should be awarded to either party and also sought an award of attorney fees.

¶5 Following a hearing, a domestic commissioner recommended denial of Father's amended answer for child support and parent-time, and denial of Father's declaratory judgment motion as moot. The commissioner imputed income to Father of $10,533 per month based upon Father's average earnings from 2010, 2011, and 2012,[2] and ordered Father to pay child support in the amount of $1,369 per month. The commissioner reserved ruling on the issues of child support arrearages and Mother's request for attorney fees. Father objected to the commissioner's recommendations and requested a hearing before the district court.

¶6 The district court heard argument on Father's objections and overruled them, affirming the commissioner's temporary orders with some modifications. The court ordered Father to pay $1,350 per month in child support, and to pay $1,000 of Mother's attorney fees. The court's award of attorney fees was related to Father's "instigat[ing] unnecessary proceedings or litigation, . . . [and] mak[ing] arguments that are without merit." Because Father was unemployed at the time of the hearing, the court required Father to pay a minimum of $123 per month toward the ordered child support and apply for two jobs per week, or face potential contempt of court proceedings. Thereafter, the case was certified for trial on the issues of (1) physical and legal custody of the children, (2) parenting plan, (3) child support, (4) child support arrearages, (5) insurance coverage for the children and premium payment, (6) right to claim the children as dependents on taxes, and (7) attorney fees. Prior to trial, Mother relocated to a different city in Utah, and Father relocated to Texas from Utah.

---

2. Mother submitted tax documents to the domestic commissioner, and subsequently to the trial court, showing Father's income over this period.

¶7    In late January 2017, shortly before the bench trial was set to begin, Father filed (1) a motion to continue the trial, (2) a motion to disqualify the assigned trial judge and commissioner, (3) a motion requesting a jury trial, and (4) a motion for summary judgment. The presiding judge of the district court denied the motion to disqualify the assigned trial judge. The trial court then denied the motion to continue and motion for jury trial, reserving time at the beginning of trial to address Father's summary judgment motion.

¶8    Through his motion for summary judgment, Father sought a declaratory judgment that Utah's custody and child support statutes are unconstitutional. Father asserted that

> Utah, like state courts across the country, has failed to protect [fundamental] rights. Instead courts have usurped these fundamental rights, enabled by legislative statute, in Utah no less, that: the government's interest is superior to the fundamental rights of fit parents and their children; and the government is entitled to determine custody and support in the "best interests of the child" merely because parents divorce.

Before trial began, however, Father sought to withdraw the motion for summary judgment, submitting instead a "Declaration of Rights." Father also sought to withdraw the motion to disqualify the assigned trial judge, despite the presiding judge's earlier denial of that motion. Father, who then, as now, was not represented by counsel,[3] filed his documents the morning of trial.

---

3. As a self-represented party in this appeal, Father is entitled to "every consideration that may reasonably be indulged," *Allen v.*

(continued…)

¶9 Father failed to appear for trial, and the trial court, despite significant efforts, could not reach him. In his absence, the court denied Father's motion for summary judgment on the merits and proceeded to take evidence on the modification petitions.[4] Following trial, the court ordered the parties to share joint legal custody and awarded sole physical custody of the children to Mother. Father was designated as the "relocating parent" and awarded visitation pursuant to statute. *See generally* Utah Code Ann. § 30-3-37 (LexisNexis Supp. 2017). The court also ordered Father to pay (1) $1,761 per month in future child support, (2) $13,690 in child support arrearages, and (3) $3,300 for Mother's attorney fees in addition to the $1,000 amount previously ordered. Father appeals.

ISSUES AND STANDARDS OF REVIEW

¶10 Father first argues that the court deprived him of his right to a jury trial.[5] We review the question of whether Father had a

_____

(…continued)
*Friel*, 2008 UT 56, ¶ 11, 194 P.3d 903 (citation and internal quotation marks omitted), though "we will ultimately hold him to the same standard of knowledge and practice as any qualified member of the bar," *Robinson v. Jones Waldo Holbrook & McDonough, PC*, 2016 UT App 34, ¶ 28, 369 P.3d 119.

4. The court addressed the motion for summary judgment on the merits and appears to have provided a basis for its denial in open court. The court later memorialized its decision in an abbreviated written order.

5. Father raises several other issues in this appeal. *See infra* ¶¶ 18–24. Our conclusion that those issues have been inadequately briefed obviates the need to address the applicable standards of review. *See Cheek v. Clay Bulloch Constr. Inc.*, 2016 UT App 227, ¶ 14 n.3, 387 P.3d 611.

right to a jury trial for correctness. *Failor v. MegaDyne Med. Products, Inc.*, 2009 UT App 179, ¶ 9, 213 P.3d 899. We have stated, however, that "it is the prerogative of the judge who actually tries the case to make the determination of whether an issue is one in equity or one in law wherein the party can insist on a jury as a matter of right." *Id.* (quotation simplified). Accordingly, "unless it is shown that the ruling determining the equitable or legal nature of the issue was patently in error or an abuse of discretion, this court will not interfere with the ruling." *Id.* (quotation simplified).

¶11 Father next asserts that the court improperly imputed income to him in ordering him to pay prospective child support and child support arrearages. We review the basis for and calculation of imputed income for abuse of discretion. *Christensen v. Christensen*, 2017 UT App 120, ¶ 10, 400 P.3d 1219. Additionally, "[t]he trial court in a divorce action is permitted considerable discretion in adjusting the financial and property interests of the parties, and its actions are entitled to a presumption of validity." *Rayner v. Rayner*, 2013 UT App 269, ¶ 4, 316 P.3d 455 (citation and internal quotation marks omitted). "We will not disturb a trial court's findings of fact unless they are clearly erroneous, that is, unless they are in conflict with the clear weight of the evidence, or this court has a definite and firm conviction that a mistake has been made." *Christensen*, 2017 UT App 120, ¶ 10 (citation and internal quotation marks omitted).

ANALYSIS

I. Jury Trial

¶12 Father asserts that he was entitled to have a jury determine the factual questions at issue in this post-divorce modification proceeding and that the court erred in denying his request for a jury trial. We disagree and conclude that the court properly denied Father's motion for jury trial.

¶13 In Utah, an original decree of divorce may include "equitable orders relating to the children, property, debts or obligations, and parties." Utah Code Ann. § 30-3-5(1) (LexisNexis Supp. 2017). The court retains continuing jurisdiction to modify or make new orders. *Id.* § 30-3-5(3), (4). Domestic cases, generally, are "equitable in nature," *Noble v. Noble*, 761 P.2d 1369, 1371 (Utah 1988), including proceedings to modify divorce decrees, *Christensen v. Christensen*, 628 P.2d 1297, 1299 (Utah 1981) ("The modification of divorce decrees is a matter of equity[.]"). "[T]here is no right to a jury trial in domestic cases where there is a . . . mix of remedies but those matters remain equitable." *Buck v. Robinson*, 2008 UT App 28, ¶ 16, 177 P.3d 648; *see also Hyatt v. Hill*, 714 P.2d 299, 302 (Utah 1986) (Howe, J., concurring) ("Divorce actions existed at statehood, were considered equitable in nature, and no right to a jury trial existed.").

¶14 The modification proceeding underlying this appeal involved equitable orders largely relating to the care and custody of the parties' children. The court addressed physical custody, legal custody, health care and medical expenses, insurance, child tax exemptions, and child support. Considering the nature of the proceedings and our precedent, the court properly concluded that the modification matter was equitable in nature, and consequently, that Father was not entitled to a jury trial.

## II. Imputed Income

¶15 Next, Father maintains that the court improperly imputed income to him in determining child support. The income imputed to a parent "shall be based upon employment potential and probable earnings as derived from employment opportunities, work history, occupation qualifications, and prevailing earnings for persons of similar backgrounds in the community." Utah Code Ann. § 78B-12-203(7)(b) (LexisNexis 2012).

¶16 Based upon the commissioner's findings, the court issued a pre-trial order in 2015, imputing monthly income to Father of $10,533 for the purpose of calculating child support. At trial in 2017, the court reviewed the financial declaration Father had submitted before trial, finding no indication of Father's current income. The declaration stated only "that [Father's] income is heavily garnished for child support and that [he is] barely living month-to-month while paying down debt." To calculate child support, then, the court first had to determine the amount of Father's income. Because Father failed to provide current financial information, failed to attend trial, and "refused to meaningfully participate in discovery," the trial court again imputed income to him.[6] The trial court heard testimony and took documentary evidence regarding Father's historical earnings at a previous job he had held from 2010 to 2012. The court determined that Father had recently started a new job in Texas and inferred that Father's income was comparable to his historical earnings because his previous job was "essentially the same job he holds now." The court ultimately imputed income to Father at $10,533 per month, based upon Father's three-year average monthly income at his previous job.

¶17 We see no basis to disturb the court's findings regarding imputed income. Although he had taken a new job in Texas with a similar title to his former position in New Mexico—on which his historical earnings were based—Father provided no current financial information and did not attend the trial. Thus, the court properly considered historical earnings as a suitable alternative

---

6. The Utah Child Support Act requires that "[e]ach parent . . . provide verification of current income." Utah Code Ann. § 78B-12-203(5)(b) (LexisNexis 2012); *see also Cummings v. Cummings*, 821 P.2d 472, 480 (Utah Ct. App. 1991) (explaining that, in part, a party's "failure to provide intelligible information" regarding income supported the court's imputation of income based on historical earnings).

to Father's current income and did not err in calculating child support based on that imputed amount.

### III. Father's Other Claims on Appeal

¶18    Father raises several other contentions, including the trial court's award of attorney fees and certain other claims related to the constitutionality of Utah's custody and support statutes. Father has not adequately briefed these issues, however, and has therefore failed to carry his burden of persuasion on appeal. *See Rose v. Office of Prof'l Conduct*, 2017 UT 50, ¶ 64 (explaining that "a party who fails to adequately brief an issue will almost certainly fail to carry its burden of persuasion on appeal" (quotation simplified)). We look to the Utah Rules of Appellate Procedure to determine whether an argument is adequately briefed. *See Heslop v. Bear River Mutual Ins. Co.*, 2017 UT 5, ¶ 44, 390 P.3d 314. To properly present an issue on appeal, a party "must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." Utah R. App. P. 24(a)(8). *See also Bank of Am. v. Adamson*, 2017 UT 2, ¶ 11, 391 P.3d 196 ("[A]n issue is inadequately briefed if the argument merely contains bald citations to authority without development of that authority and reasoned analysis based on that authority." (quotation simplified)).

¶19    At trial, the court awarded partial attorney fees to Mother, concluding that "portions of [Father's] presentation have been made in bad faith." Under Utah Code section 78B-5-825, the "bad faith" statute, the district court must generally award fees in a civil action "if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." Utah Code Ann. § 78B-5-825(1) (LexisNexis 2012). Father claims that the district court erred, particularly asserting that (1) the court awarded fees "beyond the cost of the effort and expertise expended," (2) the court did not take "evidence of hours spent [or] rate applied," and (3) "it is not bad faith for [Father] to assert his parental rights at trial specifically for the purpose to preserve the issues for appeal."

Based upon a spate of motions Father filed one week before trial, *see supra* ¶ 7,[7] the court determined that (1) Father's motion for jury trial was "clearly not allowed under the law," (2) Father's summary judgment motion "is just a re-hash . . . of arguments [Father has] already made," and (3) Father's motion to continue trial, "made on the eve of trial," could have been presented far earlier. The trial court also emphasized that Father had raised the same constitutional arguments multiple times, and noted that the court believed that Father had already sufficiently preserved these issues for purposes of appeal.

¶20 On appeal, Father does not explain how the court erred regarding Mother's counsel's effort or expertise, or describe any error regarding the lack of time-sheet evidence. Additionally, Father does not contest the court's factual findings supporting the award of attorney fees, or present reasoned analysis supported by legal authority. *See* Utah R. App. P. 24(a)(8). He fails, for example, to contest the court's findings regarding Father's several motions filed immediately before trial, or the necessity for Mother to prepare hasty responses to these motions. Father also does not confront the court's determination that Father had previously raised, multiple times, the same constitutional arguments, and that Father continued to "instigate[] unnecessary proceedings or litigation, . . . mak[ing] arguments that are without merit." Finally, Father does not describe, with reasoned analysis and citations to legal authority,

---

7. A few days after filing his motions, Father presented notices to Mother's counsel announcing that Father was withdrawing two of his four motions. Because of the timing, it should go without saying that Father's two notices were also presented only a few days *before* trial. By this time, however, the presiding judge of the district court had already decided one of the two motions. At trial, the trial court considered the merits of the second because, like Father himself, Father's withdrawal notices had failed to appear.

why he should prevail on this issue on appeal. *Id.* Accordingly, Father's challenge to the court's award of attorney fees to Mother is inadequately briefed and we decline to address it further.

¶21   With respect to Father's constitutional arguments, we first note the high bar appellants face when challenging the constitutionality of statutes. On review, we presume "legislative enactments . . . to be constitutional," *Christensen v. Rolfe*, 2014 UT App 223, ¶ 7, 336 P.3d 40 (citation and internal quotation marks omitted), and, consequently, "the party challenging a statute's constitutionality bears a heavy burden of proving its invalidity," *Jones v. Utah Board of Pardons & Parole*, 2004 UT 53, ¶ 10, 94 P.3d 283.

¶22   In sweeping fashion, Father invites us to opine on the constitutionality of conceptual standards written into statute, including the "best interests of the child" standard, child support ordered beyond the child's minimal needs, and the preponderance of the evidence standard applicable to a "best interests" determination in custody and divorce proceedings. Father also generally argues that Utah's custody and child support statutes violate the due process protections as outlined in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).[8]

¶23   Despite his reliance on *Eldridge*, Father expressly limits this appeal to Utah law, "particularly the Due Process and Uniform Operations of Laws clauses of the Utah Constitution." Although he provides some citation to Utah constitutional provisions, Father presents no reasoned analysis in his briefing of these issues on appeal. There is no fixed formula for framing

---

8. The Supreme Court in *Eldridge* considered "whether the Due Process Clause of the Fifth Amendment requires that prior to the termination of Social Security disability benefit payments the recipient be afforded an opportunity for an evidentiary hearing." *Mathews v. Eldridge*, 424 U.S. 319, 323 (1976).

constitutional challenges on appeal, but adequate "analysis must begin with the constitutional text and rely on whatever assistance legitimate sources may provide in the interpretive process." *State v. Tiedemann*, 2007 UT 49, ¶ 37, 162 P.3d 1106. Father's opening brief contains no development of authority and no meaningful application of precedent to the facts of this case. For example, Father asserts that the court "erred in failing to apply procedural and substantive Due Process and Equal Protection rights and safeguards and strict scrutiny of state action as it relates to infringement or deprivation of fundamental parental rights in the 'care, custody, and control' of children." He points to no part of the record and no particular process, however, in which the divorce decree modification procedures failed to meet constitutional requirements.

¶24    Accordingly, the overall analysis of Father's constitutional challenges is "so lacking as to shift the burden of research and argument to the reviewing court." *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998). Because Father has not adequately briefed the attorney fee and constitutional arguments, he has not carried his burden of persuasion, and we decline to further address them.[9]

---

9. In his opening brief, Father presents several additional challenges. He asserts that (1) the court did not give full faith and credit to the stipulated New Mexico joint custody order; (2) the threshold standard for modification—requiring a substantial and material change in circumstances—is unconstitutional; (3) the court failed to declare that Mother exercised undue influence upon him in New Mexico; (4) the court failed to declare that the Utah Legislature granted executive power to its judiciary in divorce proceedings; and (5) the court failed to declare that Father has never stipulated to child support. Father provides scant development and analysis of these issues, and he offers no citation to authority on any of these arguments. Because these issues are also inadequately briefed, we do not consider them.

IV. Request for Attorney Fees on Appeal

¶25    Mother seeks an award of attorney fees for defending, on appeal, the trial court's award of fees under the bad faith statute. *See* Utah Code Ann. § 78B-5-825 (LexisNexis 2012). Generally, "when a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Utah Dep't of Social Services v. Adams*, 806 P.2d 1193, 1197 (Utah Ct. App. 1991). Our supreme court "has interpreted attorney fee statutes broadly so as to award attorney fees on appeal where a statute initially authorizes them." *Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) (plurality opinion) (citation and internal quotation marks omitted). We have previously applied *Valcarce* to appellate challenges of attorney fee awards under the bad faith statute. *See Warner v. Warner*, 2014 UT App 16, ¶ 63, 319 P.3d 711. Because Mother has prevailed on appeal, we award Mother her attorney fees incurred in defending against Father's appeal of the bad faith attorney fee award. Accordingly, we remand to the district court to determine the "amount of fees reasonably incurred and properly allocable to this one issue." *Id.*

CONCLUSION

¶26    Father was not entitled to a jury trial in the parties' divorce decree modification proceedings and the trial court properly denied his request for one. The court did not err by imputing income to Father in determining the amount of child support. Father's other arguments on appeal are inadequately briefed. We remand for the district court to determine the amount of attorney fees Mother reasonably incurred defending the bad faith attorney fees award. Affirmed.

───────────